*In re* MARRIAGE OF JULIE A. BETTS, Petitioner-Appellee, and JOHN A. BETTS, Respondent-Appellant.

Fourth District No. 4—86—0507

Opinion filed April 30, 1987.—Rehearing denied June 3, 1987.

John A. Betts, of Marseilles, for appellant, *pro se.*

Paul R. Wilson, Jr., of Rantoul, for appellee.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

The respondent-husband in this appeal was adjudged in contempt of court on July 25, 1986, for failure to pay back-due child support. He was sentenced to six months in jail, but was allowed to purge him-

self by paying $12,950, the entire amount set in arrearages by the court.

Respondent raises several points on appeal, generally contesting the propriety of the alias order for rule to show cause served upon him, the manner and method of that service, the trial court's denial of his motions for a continuance and to change judges, the contempt finding itself, the amount assessed in arrears by the court, the court's purging order, and the purported failure of the court to appoint counsel on his behalf. We shall endeavor to take up each of these issues in the chronological order in which they arose below.

■ Initially, though, we must deal with the petitioner's two separate motions to strike the brief and reply brief of the respondent. Should these motions be of merit, dismissal may be warranted.

Petitioner's motions to strike essentially depict the respondent's briefs as replete with assertions of fact and law "made without requisite citation of authority or record" as called for under Supreme Court Rule 341(e)(7) (103 Ill. 2d R. 341(e)(7)). Petitioner also attacks the briefs as "replete with unsubstantiated allegations" of fact in violation of Rule 341(e)(6) (103 Ill. 2d R. 341(e)(6)). These separate motions, however, make no express reference to specific issues or statements contained in the respondent's briefs which petitioner believes are in noncompliance with a supreme court rule. Rather, the motions contain general statements, without direction, as to why petitioner advances "portions" of the briefs should be stricken.

Supreme Court Rule 341 delineates the general limitations and requirements for filing appropriate briefs in the appellate courts of this State. Subsection (e)(6) provides the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." (103 Ill. 2d R. 341(e)(6).) Concerning the argument section of an appellant's brief, subsection (e)(7) states it "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 103 Ill. 2d R. 341(e)(7).

Reviewing the respondent-appellant's briefs, it is true they represent disjointed, highly argumentative exercises in appellant advocacy. The factual points alluded to are incomplete and only selectively incorporated. Moreover, certain facts represented to us are clearly not of record, including a claimed "apparent heart attack" suffered by the respondent during the hearing or while in jail afterward. Most disconcerting of all are respondent's varied assertions questioning the integrity of the proceedings below. In this vein, respondent accuses the

trial judge, the clerk of the court, and the petitioner's attorney of all contributing to the making of false and misleading entries in the court file.

Certainly the respondent, a suspended attorney acting *pro se*, could have presented a more responsible, articulate, coherent brief. Nevertheless, where none of the purported violations of supreme court rules are so flagrant as to hinder or preclude review, then either the striking of a brief or the dismissal of an appeal is generally unwarranted. (*Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 25, 436 N.E.2d 1068, 1070.) Although respondent's compliance with Supreme Court Rule 341 is minimal, we deem it sufficient to allow us to review the merits of this appeal. Petitioner's motions to strike the respondent's brief and reply brief are denied.

Again, this matter comes before us upon a petition for rule to show cause alleging failure to pay child support during the years 1984, 1985, and 1986. As background, the original petition for dissolution of marriage was filed by the petitioner, Julie Betts, on March 26, 1982. The case was ultimately assigned to Judge William T. Caisley of the circuit court of Ford County.

On September 15, 1982, Judge Caisley entered a judgment of dissolution of marriage providing in part that respondent was to pay petitioner $35 per week per child in child support. Such payments were to be made directly to the clerk of the court. The written judgment order further provided child support was awarded based upon respondent's average gross monthly income of $1,522.50. The court by order also expressly retained jurisdiction over the parties.

No further court activity occurred between the parties until January 29, 1986, when Julie Betts filed a petition for rule to show cause why respondent should not be held in contempt for failure to pay child support during the calendar years 1984 through 1986. The petition was initially assigned to Judge W. Mark Dalton, who felt it necessary to recuse himself due to prior adversary proceedings with the respondent. The matter was then assigned to Judge Charles E. Glennon, who also recused himself from hearing the petition. Finally, the case was assigned to Judge Caisley, the judge who had originally presided over the dissolution of marriage proceedings during 1982.

The petition for rule to show cause was granted by Judge Caisley, with subsequent orders issued on several occasions throughout the first half of 1986. Respondent was never served during this time.

Finally, an alias order was filed on June 27, 1986, directing that respondent appear in court on July 25, 1986, to show cause why he should not be held in contempt. According to the return of service, a

copy of the alias order was served upon the respondent on July 18, 1986, by Captain Kenneth Muchmore of the Paxton police department. Although filed with the court on July 21, 1986, that alias order reflected a handwritten entry date of July 24, 1986. The rule to show cause hearing was then in fact held before Judge Caisley on July 25.

■ Much of respondent's argument concerns this allegedly "post-dated" alias order. Respondent essentially contends that the court file is in dispute because the alias order in question, served on July 18, 1986, and filed on July 21, could not have been signed on July 24 as indicated. Respondent thus contests the propriety of an alias order he believes was served before it was signed.

We conclude instead that some sort of clerical oversight or error allowed the order to go out signed with a July 24 date, when in actuality it was prepared and issued as of June 24. The record contains a June 24 docket entry granting issuance of a rule to show cause. A letter from counsel for the petitioner to the court reflecting enclosure of the alias order is also dated June 24.

Our review of the record further reveals two identical alias orders on file. The first, filed on June 27, 1986, is *not* the one served on the respondent. That order, signed by Judge Caisley, was originally dated in handwriting to reflect entry on July 24, 1986. However, the word "July" has been struck out and the word "June" written over it. The second order is the one actually served on the respondent. Filed with the court on July 21, 1986, to reflect return of service, the order was also signed by the judge with a July 24, 1986, date of entry.

From this we believe the July 24 date on the alias order is in all probability a mere scrivener's error. Once the oversight was realized, the date on the copy of file was changed to reflect entry on June 24. Further, Judge Caisley expressly stated during the July 25 hearing that he signed the alias order on June 24 and ordered the rule amended to show entry as of that date.

Respondent still insists that if the alias order was mailed out by counsel for the petitioner on June 24, then Judge Caisley could not possibly have received and signed it the same day. Respondent, however, fails to consider the possibility that the order could have been personally presented to the court instead. In sum, we perceive no prejudice inuring to the respondent in this regard. No "post-dated" alias order problem exists here.

■ Respondent next argues that actual service of the alias order was improper, thereby vitiating any subsequent proceedings. The return indicates service was effectuated by a Paxton police officer. Section 2—202 of the Code of Civil Procedure (Code) concerning persons

authorized to serve process (Ill. Rev. Stat. 1985, ch. 110, par. 2—202) essentially contemplates service be made by a sheriff of the county or, if the sheriff is "disqualified," by a coroner of any county. (Ill. Rev. Stat. 1985, ch. 110, par. 2—202(a).) That section further provides a court may, at its discretion and upon a motion, allow service to be made by a private person over 18 years of age who is not a party to the action. (Ill. Rev. Stat. 1985, ch. 110, par. 2—202(a).) Respondent urges that, according to section 2—202, the trial court should have issued an order authorizing someone other than a member of the sheriff's office to effectuate service. Since there is no order for a special process server, respondent concludes service completed by a Paxton police officer rather than a county sheriff's officer is improper.

Petitioner counters that respondent failed to object to the manner of service before the court below and has thereby waived the issue. As a second justification for upholding service, petitioner asks this court to take judicial notice of her claim that Captain Muchmore, the process server, also acts as a part-time deputy sheriff for Ford County in addition to his duties as a Paxton police officer.

We initially decide this issue on the basis of waiver. At no time below, either by his motion to quash, his special and limited appearance contesting jurisdiction of the court, or during the July 25 hearing, did respondent specifically object to the manner of service. The motion to quash, for example, concentrates on what respondent considered illegal service due to a "post-dated" alias order. There are also no post-judgment motions on file raising the issue. Accordingly, respondent's argument protesting the manner of service is waived.

In attempting to argue there could be no waiver on this basis, counsel acting for respondent during oral argument asserted respondent was taken into custody the moment he arrived at the Ford County courthouse for the July 25 hearing. This conduct, counsel postulated, transformed the nature of the hearing into an involuntary proceeding as far as respondent was concerned. Such facts, however, even if relevant, are clearly not of record, and we may not consider them. Had respondent wished to preserve such claims for appeal, including that of purported heart attack symptoms, he had an affirmative obligation to include them in the record. Respondent also had recourse to a section 2—1401 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) to direct such facts to the trial court's attention even after judgment. We simply cannot give attention to alleged facts which are not of record before us on appeal. We are instead constrained to proceed on the basis of the record presented.

In any event, we are not convinced this matter even involved ser-

vice of process under section 2—202. Rather, it is far more likely service was accomplished to give respondent *notice* of the hearing and proceedings initiated against him. Service of notice, as opposed to process, may be done by anyone without a court order. Also, the circuit court had expressly retained jurisdiction over the parties. For these reasons, we hold actual service upon the respondent was proper.

Continuing, respondent also attacks the sufficiency of service on another basis. He notes he was merely served with the alias order for rule to show cause, but at no time was he ever served with the actual petition. Respondent urges a proper contempt proceeding requires service of a formal charge in the nature of a petition or complaint. In that he never received formal notice by petition, respondent considers the subsequent rule to show cause proceedings fatally defective.

It is true that in proceedings to punish indirect contempts, which occur outside the presence of the court, due process requires that notice or a rule to show cause be served upon the alleged contemnor. (*Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 215-16, 365 N.E.2d 220, 225.) The alleged contemnor must be informed of the charges against him by some formal written pleading such as a petition, information, or complaint. (*People v. Javaras* (1972), 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672.) An accused in indirect contempt proceedings is also entitled to an opportunity to interpose an answer (51 Ill. 2d 296, 300, 281 N.E.2d 670, 672; *People v. Harrison* (1949), 403 Ill. 320, 328, 86 N.E.2d 208, 212) as well as receive a full hearing (*People v. Gholson* (1952), 412 Ill. 294, 299, 106 N.E.2d 333, 336).

Petitioner, in asserting due process requirements were in fact complied with below, directs our attention to the following language:

"In the case of indirect contempt, committed out of the presence of the court, the accused is entitled to notice. [Citation.] The proper practice is to issue an *order*, rule, citation, or other process requiring him to appear in court *** and this must be served on him personally." (Emphasis added.) 12 Ill. L. & Prac. *Contempt* sec. 56, at 83 (1983).

Clearly, formal written notice is the key. As a practical matter here, we find the alias order was sufficient to give respondent proper formal written notice of the allegedly contemptuous acts for which he was to answer irrespective of a lack of service of the petition.

The alias order for rule to show cause actually served upon the respondent is in substance similar to the petition for rule to show cause. The petition recites allegations of wilful and contumacious failure or refusal to comply with a court order insofar as child support had not been paid during 1984 through 1986. The alias order finally

served upon the respondent in July of 1986 contains basically the same allegations. The order also expressly informed respondent when he was to appear in court for a hearing on those charges. We fail, then, to see what would have been added by also requiring service of the petition in this instance. Despite respondent's claims to the contrary, doubtless the alias order was sufficient to give him adequate notice of the nature of the proceedings against him.

■ The respondent next contends the trial court erred in denying his oral motion for a continuance. Respondent essentially avers that, because he was only served with the alias order on July 18, or just one week prior to the July 25 hearing date, he did not have time to adequately prepare his defense. He asserts "basic justice" requires permitting him more time to prepare his case, including the bringing in of documentation to support his claims. In his brief, respondent also infers that the six months of continued court activity in this matter since the January filing of the petition somehow entitled him to be allowed more than one week in which to answer.

Petitioner counters that, in asking for a continuance, respondent admitted he had read the alias order and was prepared to proceed on it. Respondent, on the other hand, again construes any participation in the proceedings as involuntary due to an alleged armed guard escort into the courtroom. As we noted above, however, such facts, even if true, are not preserved of record and cannot be considered by us on appeal.

The trial court did not abuse its discretion in denying respondent's oral motion for a continuance. The July 25 hearing was properly noticed up and scheduled. Although one week is a relatively short period, it is nevertheless not an impossible or unduly burdensome time frame in which to prepare for a hearing. Furthermore, respondent could have presented a written motion for a continuance prior to the July 25 hearing. He also could have given the parties notice in advance of his intent to present his oral motion for a continuance at the time of the hearing. We find no reversible error in the trial court's ruling.

■ Our analysis next focuses on whether, as respondent charges, the trial court erred in denying his "motion to change judges" presented July 25. Perhaps more appropriately framed as a motion for change of venue or a motion for substitution of judges, such motions are governed by section 2—1001 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001). It is well settled under this section that there exists an absolute right to a change of venue where a petition asserting general prejudice on the part of a trial judge is duly

made, verified, and filed in accordance with the statutory requirements. (*In re Estate of Roselli* (1979), 70 Ill. App. 3d 116, 120, 388 N.E.2d 87, 90.) For this right to remain absolute, the petition must be filed prior to trial or hearing and before the judge to whom it is presented has made any substantive ruling in the case. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(c); *Faris v. Faris* (1986), 142 Ill. App. 3d 987, 996, 492 N.E.2d 645, 651.) A court has no discretion to deny such a timely and proper request. *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.

■■ That is not to say a change of venue may not be had under any circumstances once there is a hearing on the merits or a ruling on a substantive issue. In such cases, timeliness and specificity are required. Thus, the right to a change of venue still exists, even after a substantive ruling, so long as actual, *specific* prejudice can be demonstrated and the motion is made at the earliest practical moment once prejudice is discovered. (*People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731.) Change of venue then becomes a matter of judicial discretion. (*In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 494 N.E.2d 541.) In stressing timeliness, courts have long been concerned that a litigant not engage in improper "judge shopping"; that is, the seeking of a change of venue after it is determined, based upon a trial court's adverse rulings, that a particular judge may be unfavorably disposed toward a litigant's position. *People v. Taylor* (1984), 101 Ill. 2d 508, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209.

■■ Although respondent in his brief on appeal raises "serious charges" concerning the "conduct of the court and its personnel," he clearly did not allege any specific instances of prejudice on the part of Judge Caisley below. Respondent merely argues the proceedings on the rule to show cause represent a completely new matter and not a continuation of the original dissolution of marriage action. His apparent premise, then, is that he is possessed of an absolute right to a change of venue on this basis alone.

Respondent's assertion of law, however, is not accurate. Our supreme court has specifically held that "post-decree petitions *do not constitute new actions, but merely continuations of the dissolution proceeding*, and a substantive ruling on one petition will preclude a change of venue as of right on another." (Emphasis added.) (*In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 531, 463 N.E.2d 719, 722.) Under this language, the fact that Judge Caisley presided over and made substantive rulings during the original dissolution proceeding precludes a change of venue as of right on the post-decree rule to

show cause matter subsequently assigned to him.

The question remains whether the intervening assignments and recusals of other judges in the interim alters the rule. Again, two judges recused themselves from hearing this case before it was reassigned to Judge Caisley. In commenting on the possible routes a post-dissolution petition may take, the supreme court in *Kozloff* stated:

> "It follows that a judge's substantive ruling during the dissolution proceeding will preclude a change of venue as of right on a post-decree petition before that same judge. As sometimes occurs, however, the judge assigned to hear a post-decree petition or motion may not be the same judge who presided at the dissolution proceeding, or different judges may hear different post-decree matters at different times. Section 2—1001(c) of the Code of Civil Procedure provides that a motion for change of venue will be allowed unless *'the judge to whom it is presented* has ruled on any substantial issue in the case.' (Emphasis added.) [Citation.] Thus, the assignment of a different judge at any point in the proceedings entitles the parties to a change of venue as of right if *that judge* has not made a substantial ruling in the case." (Emphasis added.) 101 Ill. 2d 526, 532, 463 N.E.2d 719, 722.

From this we gather that *any* substantive ruling made by a judge, either during the dissolution proceedings or at any time in the post-decree motion practice, precludes a change of venue as of right before that same judge. As Judge Caisley issued the judgment of dissolution, and post-decree petitions clearly represent continuations of the same matter, we hold the trial court properly denied the respondent's motion to change judges. Although respondent contends he was somehow automatically entitled to expect that a completely different judge would preside over his post-dissolution proceedings, such is not the law. In any event, respondent was not precluded from seeking a substitution of judges by alleging specific prejudice, something he failed to do.

In continuing his argument on appeal, respondent directly attacks the contempt finding itself based upon two theories: (1) the contempt order was not in writing, thereby rendering it "void and fatally defective"; and (2) the facts were insufficient to support a finding of contempt.

Turning first to allegations of a lack of a written formal order, we believe such a failure under the facts is not fatal. As in any other matter, an accused contemnor has a right to appeal a final decision of a trial court. The purpose of requiring that facts constituting

contempt be set forth with specificity is to afford an appellate court a basis for reviewing the contempt order. In cases of indirect contempt, because the alleged acts occur outside the presence of the court, charges alleging these acts must be filed. Due process then requires a hearing be held on the charges. An appellate court will accordingly have at its disposal the benefit of the record, including the petition alleging specific acts of contempt and the testimony adduced at the hearing, to adequately determine whether the finding of contempt is substantiated. (*Hoga v. Clark* (1983), 113 Ill. App. 3d 1050, 448 N.E.2d 196; see *Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 365 N.E.2d 220.) Therefore, the rules regarding specificity of a formal written order are relaxed somewhat in indirect contempt cases.

Where, as here, the petition sets forth specific acts allegedly constituting contempt, a report of the testimony at the hearing is available before a reviewing court, and the trial court has made certain oral findings at the conclusion of the hearing concerning the wilful conduct upon which the contempt finding was based, an appellate court may properly review the matter even without a formal written order. As a further consideration, we note that at the time of the hearing, and upon the written contempt mittimus on file, respondent was provided with the means whereby he could purge himself, a factor of some significance. (See *People v. Mowery* (1983), 116 Ill. App. 3d 695, 452 N.E.2d 363.) We uphold the contempt finding in this regard.

Second, respondent avers that his alleged failure to pay child support was not wilful, and therefore the court erred in finding him in contempt under the facts.

The rules in cases of failure to pay child support are well stated. Generally, the power to enforce an order to pay money through the contempt power is limited to cases of wilful and contumacious refusal to obey a court order. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 285, 469 N.E.2d 167, 175.) The existence of an order of the court and proof of wilful disobedience of that order are essential to any finding of indirect contempt. (*People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453.) Thus, the failure to make child-support payments pursuant to a court order or judgment is *prima facie* evidence of indirect, civil contempt. *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 420, 464 N.E.2d 795, 807.

Following a showing of failure to make payment, the burden then rests upon the alleged contemnor to show his noncompliance was not wilful and contumacious and that he had a valid excuse for his failure to pay. (*People v. Stanely* (1978), 60 Ill. App. 3d 909, 911, 376 N.E.2d 1095, 1097; *Comiskey v. Comiskey* (1977), 48 Ill.

App. 3d 17, 25, 366 N.E.2d 87, 93.) Whether noncompliance is wilful or whether it is backed by a valid excuse is a question of fact. Because the trial court is in the best position to determine the relative credibility of the witnesses and either accept or reject their testimony in whole or in part (*In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065), a reviewing court will only reverse the trial court's decision if it is against the manifest weight of the evidence (*In re Marriage of Harvey* (1985), 136 Ill. App. 3d 116, 483 N.E.2d 397).

The evidence here is uncontroverted that, except for one $70 payment, respondent failed to pay child support through the clerk of the court during the years in question. Respondent nevertheless steadfastly maintains he made support payments to the petitioner, although he could not recall whether any such payments were ever directed through the clerk's office. He asserts on appeal that he and his former wife entered into an agreement whereby he would make payments directly to her as opposed to through the clerk's office. Respondent also testified during the July 25 hearing that he told his former wife he would not appeal the original 1982 dissolution judgment if she would accept periodic child-support payments directly, and she agreed to this arrangement.

It is undisputed from the testimony that respondent did on occasion provide for the children's clothes, shoes, glasses, and other expenses. He also gave the children spending money, paid for their attendance at certain camps, and sent in checks for his son's school lunches. Respondent concludes that, in light of these payments and the alleged agreement with petitioner, he is effectively being forced to "pay twice" under the contempt order.

Despite respondent's protestations to the contrary, and notwithstanding his unsubstantiated claims of compliance, the trial court's finding of wilful refusal to pay court-ordered child support is clearly supported by the evidence. Respondent provided no documentation whatsoever to corroborate his claims of payment. There were no canceled checks, receipts, or other evidence presented before the trial court.

Further, as the court below correctly noted, any agreement purporting to modify a child-support order must be made in court. (*Blisset v. Blisset* (1986), 144 Ill. App. 3d 1088, 495 N.E.2d 608, *appeal allowed* (1986), 113 Ill. 2d 557.) There is no such court-sanctioned agreement here. Accordingly, even were such a pact made between the parties, we cannot recognize it retroactively.

The court below was also correct in finding that the other expenditures made by the respondent on behalf of his children were gifts

arising out of the duty of a parent, even a noncustodial one, to support his or her child. That duty arises out of the parent-child relationship and transcends any contractual, court-ordered obligation. 144 Ill. App. 3d 1088, 495 N.E.2d 608; *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 393 N.E.2d 1256.

Still, a clear defense to contempt exists where the failure of a person to obey an order to pay is due to poverty, insolvency, or other misfortune, unless that inability to pay is the result of a wrongful or illegal act. (*Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 552, 306 N.E.2d 604, 606.) Respondent vigorously contends the poverty or misfortune defense is available to him. He claims he has been virtually destitute and penniless since attorney suspension proceedings were initiated against him during 1984. He also claims he has not made enough money during the years 1984 through 1986 to even be able to file income tax returns and that he has earned nothing since his six-month suspension from the practice of law. See *In re Betts* (1985), 109 Ill. 2d 154, 485 N.E.2d 1081.

The defense of poverty and misfortune as a valid excuse for nonpayment has been found applicable only in the most extreme cases, notably where a defendant had no money and no way of getting money to meet his support obligations. (*People v. Stanley* (1978), 60 Ill. App. 3d 909, 376 N.E.2d 1095; *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 306 N.E.2d 604.) Petitioner argues this is not such an extreme case. She points to testimony indicating respondent apparently had enough money to send out some 2,000 resumes while looking for a job. She also offers by exhibit a January 1986 letter in which respondent offered to pay $1,000 for custody of the children. Petitioner further notes respondent was able to purge himself of the contempt order by paying the entire amount set in arrearages—$12,950—the same day the order was entered. Respondent, however, answers he is being totally supported by his second wife.

Simply stated, there is just no evidence of the extreme circumstances of poverty and misfortune as it is contemplated as a defense to a contempt proceeding. No financial records of any kind were ever supplied by the respondent. Nor did respondent ever submit any proof of income, either at the hearing or in any post-judgment motion, for the trial court's consideration. We therefore uphold the trial court's finding of contempt.

At the conclusion of the July 25, 1986, hearing, the trial court sentenced respondent to six months in jail and denied his request for release on bond. The court calculated the amount of past-due child support since the dissolution of marriage in 1982 to be $12,950, and

provided the respondent could purge himself of the contempt order by paying the entire amount to the petitioner.

■■■ Respondent assails the amount set in arrearages by the trial court. Respondent once again raises his "paid twice" argument, contending he did indeed make child-support payments, but was not permitted to prove it. He reiterates he paid for clothes and other expenses of the children. He also continues his unsubstantiated, uncorroborated assertion of payments made directly to the petitioner by agreement, an agreement he claims obviated the necessity of paying money through the clerk's office as otherwise directed by court order. He concludes he was not given proper credit for payments actually made.

As we indicated above, our review of the record fails to disclose any court-approved agreement between the parties which would allow respondent to forego paying his child-support obligation. Further, it has been recognized that "[p]arties to divorce or dissolution matters should not be allowed to contract away their responsibilities especially as they deal with child support." (*Blisset v. Blisset* (1986), 144 Ill. App. 3d 1088, 1092, 495 N.E.2d 608, 611, *appeal allowed* (1986), 113 Ill. 2d 557.) Respondent cannot merely bargain away his obligations. Moreover, support in the form of providing clothes and paying for other expenses arises as a duty of a parent independent of any court-ordered obligation.

■■■ It is also the general rule in Illinois that child support payments become a vested right as they accrue (*In re Marriage of Jobe* (1987), 151 Ill. App. 3d 998, 503 N.E.2d 1146), a right which cannot be unilaterally terminated by the party paying support (*Bodine v. Bodine* (1984), 127 Ill. App. 3d 492, 468 N.E.2d 1004). A court may not order a decrease in the amount already owing on past-due child-support installments:

> "[W]hen a court decrees that an amount of *** support is to be paid, the court cannot reduce it retroactively. As each installment becomes due, the right to that installment is vested. The party entitled to receive this payment has a right to expect, plan, and look forward to its receipt, while on the other hand the duty to continue payment cannot be reduced or eliminated." *Collins v. Collins* (1977), 47 Ill. App. 3d 258, 264, 361 N.E.2d 787, 791.

■■■ While in the proper case courts will give effect to an agreement between the parties to waive or reduce payments, in some instances applying the doctrine of equitable estoppel (*Matzen v. Matzen* (1979), 69 Ill. App. 3d 69, 387 N.E.2d 14), there is absolutely no indi-

cation in the record of any agreement to waive payments or to reduce them by the amount of other expenditures contributed for the well-being of the children. In those decisions which have allowed an equitable credit against support arrearages, an essential element of detrimental reliance was present. (See *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59 (court found the respondent-father had relied upon the petitioner-mother's conduct indicating her willingness to give up or modify his right to support).) No such reliance to the detriment of the respondent is apparent here. Moreover, respondent never expressly raised estoppel before the trial court and could be considered to have waived any possible argument concerning it on appeal.

Respondent additionally on appeal raises the fact that petitioner did not make any demand for unpaid child support over a 3½-year period before she filed the petition in January of 1986. He argues in his brief it "strains credibility" to believe she would wait so long to seek past-due support if respondent was "truly in arrears." He asserts her failure to make a claim for child support allegedly due and owing over such a long period of time constitutes some sort of waiver or admission that payments have been made.

Apparently respondent's unarticulated argument is a laches or estoppel theory as a further defense. (See *Blisset v. Blisset* (1986), 144 Ill. App. 3d 1088, 495 N.E.2d 608, *appeal allowed* (1986), 113 Ill. 2d 557; *Bodine v. Bodine* (1984), 127 Ill. App. 3d 492, 468 N.E.2d 1004.) Again, the doctrine of equitable estoppel may be applied to all or part of past-due installments in the appropriate case. (*Anderson v. Anderson* (1964), 48 Ill. App. 2d 140, 198 N.E.2d 342.) Contrary to respondent's assertions, however, equitable estoppel cannot be created based solely on the petitioner's failure to make a demand for child support upon the respondent over several years or upon the fact she allegedly never brought up the issue of child support. *Bodine v. Bodine* (1984), 127 Ill. App. 3d 492, 495, 468 N.E.2d 1004, 1006.

Respondent next maintains the trial court generally miscalculated the total amount in arrears. He notes the judgment of dissolution in 1982 granted him one month's visitation each summer in addition to biweekly visitation. He asserts that "[n]o one contemplates the Respondent supporting his children twice, once with the mother and once with himself." He concludes he should have been given an allowance for that amount of time, calculating a credit entitlement of $1,213.33 as of the hearing date.

Respondent never directed this purported "error in calculation" to the attention of the trial court at any time below. Moreover, we are aware of no law which requires suspension of child support while visi-

tation rights are exercised by a noncustodial parent.

An additional point concerning the amount set in arrearages was called to our attention during oral argument. The court below calculated the total arrearage from the date the judgment of dissolution was entered in 1982, with allowance made for the one $70 payment of record. The petition for rule to show cause only requested past-due support during the years 1984 through 1986.

There is no question the trial court went beyond what was asked for in the petition. Inasmuch as respondent did not expressly raise this argument either in the trial court or in his brief on appeal, the issue is waived.

One further item in this area deserves mention. While respondent stresses his dire financial straits inhibited his ability to make support payments, at no point did he ever seek leave of court to reduce or modify his obligations. The court order of dissolution setting the amount of child support did so subject to revision based upon respondent's then-monthly reported gross income of $1,522. Should the respondent have wished to modify his monthly obligations in relation to his purported changed status and minimal earnings, he certainly could have come into court and done so.

 ██ Respondent next asserts the trial court erred when it required him to pay in one lump sum the total amount set in arrears in order to purge himself of the contempt order. Rather, respondent continues, the purging order should have been more in line with both his financial condition and his ability to pay. Petitioner answers that respondent's ability to purge within hours of the order of contempt is the "most cogent evidence of the propriety of the [p]urge [o]rder."

In any civil contempt proceedings such as this, a court must allow the contemnor an opportunity to purge his contempt. (*In re Marriage of Harvey* (1985), 136 Ill. App. 3d 116, 483 N.E.2d 397.) The purging provision in a civil contempt sanction for nonpayment must be based upon a contemnor's ability to pay. (*In re Marriage of Ramos* (1984), 126 Ill. App. 3d 391, 466 N.E.2d 1016, *cert. denied* (1985), 471 U.S. 1017, 85 L. Ed. 2d 305, 105 S. Ct. 2023.) Total inability to pay, however, goes not to the question of purgation, but rather to the question of wilfulness, which is anterior to incarceration under a contempt order. *People v. Mowery* (1983), 116 Ill. App. 3d 695, 702, 452 N.E.2d 363, 368.

While a spouse is not automatically presumed to be prejudiced because he is forced to pay accumulated support in a lump sum (*Jones v. Meade* (1984), 126 Ill. App. 3d 897, 467 N.E.2d 657), the order below in all probability lacked an effective purging provision. Such an order

should realistically be structured "according to *** ability to meet the payments, and to provide terms upon which the balance should be paid, so that by satisfying the order [the respondent] could purge himself of the contempt and be discharged from jail." *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 552, 306 N.E.2d 604, 606.

Granted, the court below could have allowed respondent to purge himself by ordering an initial payment and requiring payment of the balance by installment. Hindsight suggests requiring payment of $12,950 all at once was unrealistic, particularly based on ability to pay.

Actual payment of the entire amount in full, however, renders the point moot. There is nothing to be accomplished by reversing this purging order, as respondent requests. The money has been paid; past-due support obligations have been met. During oral argument, counsel acting on behalf of the respondent indicated the respondent's mother and present wife furnished the money for this payment. Counsel claimed they also executed affidavits to that effect. No such affidavits, though, appear in the common law record. We are therefore precluded from considering such alleged facts.

Respondent raises one other argument in this area. He contends it was error for the court to refuse bail and to instead require payment of the entire balance directly to the petitioner. This argument is meritless. Petitioner had a vested right to support already due and owing, and any such payment should have gone to her. Respondent was not entitled to a bail bond in lieu of meeting past-due support obligations.

Respondent's final argument on appeal concerns what he characterizes as the trial court's failure to act on its "duty" to appoint counsel on his behalf. We note the general trend, particularly as recognized in the Federal courts, toward granting an indigent father the right to assistance of counsel before he may be incarcerated in civil contempt proceedings for failure to pay child support. (See *Sevier v. Turner* (6th Cir. 1984), 742 F.2d 262.) Illinois courts, however, have not yet addressed whether this State recognizes such a constitutional right to counsel. See *Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102.

Regardless, we need not decide the issue here. Before counsel may be appointed, there must be a showing that a party desired or requested such appointment, and that the party was indigent. (*People v. Mattison* (1986), 149 Ill. App. 3d 816, 820, 500 N.E.2d 1103, 1106.) Respondent failed to request appointment of counsel at any time below. He also never raised a showing of indigency so that the trial

court could consider whether counsel should be appointed. Moreover, respondent is himself an attorney, albeit a temporarily suspended one. We conclude his failure to properly preserve a question of potentially constitutional import constitutes waiver. See *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.

Lastly, petitioner contends she has a right to attorney fees incurred while enforcing a child-support obligation after a finding of wilful and contumacious refusal to comply with a court order.

■■ ■ Where attorney fees sought relate to successful enforcement of a child-support award, and the failure to pay was "without cause or justification," an award of fees against the person who owed the past-due support is considered mandatory. (*In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 974, 479 N.E.2d 1152; *Sostak v. Sostak* (1983), 113 Ill. App. 3d 954, 447 N.E.2d 1345; Ill. Rev. Stat. 1985, ch. 40, par. 508(b).) Because the primary prerequisite to any contempt finding is wilful, contumacious conduct, it therefore follows that a contempt order carries with it an implicit finding that failure to make child-support payments are without cause or justification. *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152.

Under the clear weight of authority, petitioner appears entitled to reasonable attorney fees. As a practical matter, it is uncertain what she could actually recoup from the respondent. Nevertheless, the mandatory nature of the fee award is clear. There was no determination by the trial court below as to the reasonable amount of attorney fees based upon the relevant factors to be assessed in computing such an award. (See *Quinsippi Corp. v. Bening* (1982), 105 Ill. App. 3d 241, 433 N.E.2d 1368.) The petitioner is therefore best able to pursue this matter at the trial court level should she so decide.

Accordingly, the order of the circuit court of Ford County is hereby affirmed.

Affirmed.

GREEN and KNECHT, JJ., concur.