NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250454-U

NO. 4-25-0454

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 7, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| RUSSELL L. HAINDS, | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | Henderson County |
|     and | ) | No. 09DC23 |
| SONIA L. HAINDS, | ) | |
|     Respondent-Appellant. | ) | Honorable |
| | ) | Raymond A. Cavanaugh, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's order holding respondent in indirect civil contempt where all the issues raised by respondent on appeal were moot, forfeited, or lacked merit.

¶ 2    Petitioner, Russell L. Hainds, and respondent, Sonia L. Hainds, were divorced in 2010. Pursuant to the dissolution judgment, Sonia was awarded the marital home and ordered to "make reasonable efforts" to refinance the mortgage on the property. In 2024, Russell filed a motion to enforce the judgment because Sonia still had not refinanced the mortgage. Following a hearing, the trial court found Sonia in indirect civil contempt and ordered her to refinance the mortgage or list the property for sale within 60 days. Thereafter, Sonia successfully paid off the mortgage, and the court recognized that Sonia had purged herself of contempt. Sonia appeals *pro se*, arguing that the court (1) abused its discretion by excluding evidence she presented at the hearing, (2) misinterpreted court orders, (3) abused its discretion in imposing a 60-day deadline to

refinance or list the property for sale, (4) demonstrated bias against her, and (5) failed to adjudicate several issues she raised at the hearing. For the reasons that follow, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4         Russell and Sonia married in 1992. They had three children together: J.H. in 1992, D.H. in 1995, and H.H. in 2006. In 2009, Russell filed a petition for dissolution of marriage. In September 2010, the trial court entered a judgment of dissolution of marriage. Pursuant to the judgment, Sonia was awarded the marital residence and ordered to "assume, pay and save [Russell] harmless from any taxes or indebtedness secured by the real estate." The judgment further provided: "[Sonia] has the obligation to make reasonable efforts to refinance said mortgage on or before August 31, 2012. In the event she is denied financing she shall continue to attempt to refinance every six (6) months." Pursuant to the judgment, Russell was ordered to pay maintenance to Sonia of "$601.00 per month for a period of 24 months commencing August, 2010," which he was to satisfy by paying "the monthly marital residence mortgage of $501.00 per month and the balance by payroll withholding." Russell was also ordered to pay child support.

¶ 5         In July 2012, Russell filed a petition to terminate maintenance. He also requested that "an amount equivalent to the monthly mortgage payment be deducted from [his] child support obligation and used to make the mortgage payment on the marital residence, with the balance of child support being paid by income withholding," until Sonia refinanced the mortgage on the marital home. In August 2012, the trial court entered an agreed order terminating maintenance, as well as a uniform order for support requiring Russell to pay $1,530 per month in child support, with $532 per month from that amount "deducted and paid toward [Sonia's] mortgage with Wells Fargo Bank." The order further provided: "Respondent shall continue to have obligation to do mortgage refinance as soon as possible."

¶ 6        On October 30, 2015, the trial court entered a uniform order for support requiring Russell to pay monthly child support of $1,700. The order provided that Russell's "[a]ctual payment" to Sonia was "reduced by $500.00 per month" and "paid toward [Sonia's] mortgage with Wells Fargo."

¶ 7        In February 2024, Russell filed a petition to enforce and modify. According to Russell, Sonia still had not refinanced the mortgage debt on the marital home and "failed to make any good faith efforts to refinance the property." Russell further asserted that the "house payment has fluctuated and increased" well beyond the $500 per month he was ordered to pay, asserting that he was required to pay $639.54 in December 2018 and $803.03 in October 2023. As a result, Russell requested that (1) Sonia be required to refinance the mortgage or sell the property, (2) Sonia be found in civil contempt for failing to abide by the trial court's orders to refinance the property, (3) Sonia be required to reimburse him for his legal fees and costs, and (4) he be reimbursed for his overpayment for taxes and insurance on the property.

¶ 8        In October 2024, Sonia filed an "Emergency Motion to Enforce Support Order." According to Sonia, Russell was "in arrears by more than 120 days in making the[ ] mortgage payments, placing the marital home at immediate risk of foreclosure." Therefore, Sonia asked the trial court to "compel [Russell] to bring the mortgage account current." In November 2024, Sonia filed motions to (1) compel Russell to provide documentation regarding tax-related filings, mortgage payments, and 401(k) information and (2) extend Russell's child support obligations beyond H.H.'s 18th birthday "until [H.H.] graduates from high school in May, 2025."

¶ 9        The trial court held a "Final Case Management Conference" on December 9, 2024. At that time, the court resolved Sonia's motion to compel. Following that hearing, the court entered an order providing that all "pending motions are set for trial on January 13, 2025," and identified

those motions as (1) Russell's petition to enforce and modify, (2) Sonia's motion to extend child support, and (3) Sonia's emergency motion to enforce the support order.

¶ 10 The trial court held the hearing as scheduled on January 13, 2025. Russell was represented by counsel, while Sonia represented herself. Russell presented evidence establishing that he was current on the mortgage payments for the marital home, thereby rendering moot Sonia's emergency motion to enforce ~~the~~ support order.

¶ 11 Russell called Sonia as his first witness. Sonia testified that she resided at the marital home "[s]ometimes" but admitted that she had not spent the night there since June 2023. Sonia testified that she and her youngest daughter, H.H., lived primarily at another home, where Sonia's father resided before his death. Sonia testified that the property where she and H.H. live is "in a trust" that is "tied to [her] family," but she denied being a beneficiary of the trust.

¶ 12 Sonia's financial affidavit, dated September 22, 2024, was admitted into evidence. In her affidavit, Sonia listed as monthly expenses $348.40 for mortgage payments and $71 in real estate taxes, but Sonia admitted that she did not make any such payments for any property. She testified that she made four monthly payments for homeowner's insurance on the marital home in December 2023 but made no other homeowner's or renter's insurance payments, even though her financial affidavit listed homeowner's/renter's insurance as a monthly expense of $130. Sonia agreed that her child support "is reduced by the monthly mortgage payment" on the marital home and that "the insurance and real estate taxes are escrowed as part of that mortgage payment."

¶ 13 Sonia's bank statements and tax records were admitted into evidence. Sonia testified that she obtained a loan for $4,500 and used her vehicle as collateral. She said she used the loan proceeds to "help [her] catch up on some bills and do things with [her] daughter." Sonia also obtained a $500 "Christmas loan" in December 2023. Sonia agreed that she received federal

tax refunds of $4,844 from her 2019 taxes, $3,254 from her 2020 taxes, $13,088 from her 2021 taxes, $6,562 from her 2022 taxes, and $4,142 from her 2023 taxes. Sonia also agreed that she deposited $8,110.61 into her bank account on September 7, 2022, but said she had "no idea" what the source of those funds was.

¶ 14        Sonia testified that she did not recall when she first tried to refinance the mortgage on the marital home. She admitted that she did not try to refinance every six months. Sonia testified: "I had made inquiries about refinancing and was told that my credit was not up to par, that I should give it a year or two." Sonia said she made inquiries by speaking "to a person" at "[j]ust a couple" banks. She said she did so "every year" or "every couple years." She testified that she never filled out an application to refinance because she did not "want to ding [her] credit by doing a hard pull." She said she had "spoken to people" who told her, after doing "soft [pulls]," that her credit was "not up to par." Sonia admitted that she never attempted to refinance the mortgage or take out a loan to pay off the mortgage balance in 2024.

¶ 15        When questioned further about the $8,000 deposit she made in September 2022, Sonia said she thought it was "probably" an insurance payout after tools were stolen from her garage. Sonia testified that she never directly paid the taxes on the marital property because they were "escrowed." She testified that the insurance payments were also escrowed but said she made payments directly to the insurance company "when the insurance was dropped." She agreed that she never paid Wells Fargo for taxes or homeowner's insurance. Sonia testified that she did not use any of the money from her tax refunds or insurance proceeds to pay off the mortgage and said she used those funds to pay bills and living expenses and "took [her] daughter to her games, stuff like that."

¶ 16        Russell testified that as of December 2024, the mortgage balance on the marital

home was $9,893.07 and the monthly payment, including real estate taxes and homeowner's insurance, was $554.15. Russell admitted into evidence documents showing that his monthly mortgage payments ranged from a low of $464.17 in 2015 to a high of $803.03 in 2024. Russell admitted that he sometimes made late mortgage payments. Russell testified that in approximately December 2023, the homeowner's insurance policy was canceled and he was forced to "make up" the money, which increased the monthly mortgage payment. He also testified that the real estate taxes increased over the last 15 years. He testified that Sonia never reimbursed him for the real estate taxes or homeowner's insurance.

¶ 17    When the hearing reconvened on February 10, 2025, Sonia admitted into evidence a Wells Fargo mortgage statement and attempted to admit into evidence "denial letters" she received after applying for mortgage refinancing. The trial court instructed Sonia that she had to lay a foundation and that the letters had to be dated for them to be admitted. After examining the letters, the court determined that only one was dated. Therefore, the court admitted that one letter, which was from Raritan State Bank and dated August 30, 2023. Sonia also attempted to admit into evidence a letter from "The Villas at Carl Sandburg" for expenses related to H.H. when she "will be living on her own part-time." Russell objected on "[f]oundation and relevancy" grounds. The court sustained the objection, finding the letter "irrelevant" because "[n]obody is attending college at this point in time." The court instructed Sonia that she should file "a petition for college education expenses" after she "incurred the college education expenses." Sonia testified that since January 13, 2024, she made one inquiry about obtaining a personal loan in the amount of $15,000, which she agreed was "in excess of what is owed on the property." She said she made that inquiry "the week before last."

¶ 18    During closing arguments, Russell asked the trial court to terminate his child

support obligation immediately to compensate him for paying the property taxes and homeowner's insurance on the marital property for nearly 15 years. In her closing argument, Sonia asked the court to direct Russell to "catch up on all back child support that was not paid out in December of '24, January and February of 2025." The court asked Sonia: "Ma'am, just so I'm clear, are you saying he hasn't paid child support in December, January, or February?" Sonia responded: "I only got one payment of $600 in December." The court then stated: "You didn't put that into evidence so I can't really consider that. *** He's obligated to continue the child support payments as ordered until I decide otherwise, okay?" The court then stated: "And if he's behind, you'll have to bring him back for your own contempt proceeding."

¶ 19 On February 20, 2025, the trial court entered an order (1) denying Sonia's request to extend child support past H.H.'s high school graduation, (2) requiring Russell to continue paying child support until H.H.'s high school graduation on May 18, 2025, (3) requiring Russell to continue to pay the monthly mortgage until May 18, 2025, unless Sonia refinanced the mortgage prior thereto, (4) finding Sonia in indirect civil contempt for failing to abide by the court's orders for 13 years and "willfully fail[ing] to make any attempts to refinance the residence until 2023," (5) requiring Sonia to pay Russell $2,500 in attorney fees, (6) requiring Sonia to either list the marital property for sale or refinance the mortgage on it within 60 days, (7) denying Russell's request for reimbursement of his payments for real estate taxes and insurance on the property, and (8) reserving the right to impose further sanctions against Sonia if she failed to purge herself of the "contempt of Court finding." The court also entered a uniform order for support requiring Russell to pay $532 per month to Wells Fargo and $1,168 per month to Sonia for child support.

¶ 20 On March 3, 2025, Sonia filed a motion for reconsideration. On April 7, 2025, the trial court held a hearing on the motion, as well as a purge hearing. At the hearing, Sonia admitted

into evidence three letters of rejection for mortgage refinancing she received from DMI Financial, Inc., on November 14, 2013, January 8, 2016, and December 11, 2017. After considering that evidence and the arguments of the parties, the court stated, in pertinent part:

> "I want to make clear that I heard the evidence. The issues raised in the Motion to Reconsider does [*sic*] not change the Court's opinion that the Judgment of Dissolution required [Sonia] to refinance the debt within a certain period of time and that there were no attempts made for the first—looks like now with the reconsidered evidence for the first three years."

¶ 21 On April 10, 2025, the trial court entered a written order denying the motion for reconsideration, finding that the evidence and argument presented by Sonia at the hearing did "not change the Court's opinion and ruling as to the Order entered on February 20, 2025." The court further found that Sonia had "paid off the mortgage on the residence and has hereby purged herself of the Court's Contempt finding of February 20, 2025."

¶ 22 This appeal followed.

¶ 23                                  II. ANALYSIS

¶ 24 Initially, we note that Russell, as appellee, has not filed a brief on appeal. "[I]f the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Under this standard, we are able to decide this case, even though Russell has not filed a brief.

¶ 25 Secondly, we must consider whether we have jurisdiction over the issues Sonia raises on appeal. See *In re Estate of Johnson*, 2023 IL App (4th) 220488, ¶ 14 ("[T]his court has an independent obligation to consider its own jurisdiction."). "The existence of a real controversy

is an essential prerequisite to appellate jurisdiction." *In re Estate of Wellman*, 174 Ill. 2d 335, 353 (1996). "When 'intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party' [citation], then the appeal, and issues therein, are considered moot." *Felzak v. Hruby*, 226 Ill. 2d 382, 392 (2007). Specifically, when a finding of contempt has been purged by the contemnor satisfying the conditions of the contempt order, the appeal from that order is moot because no effectual relief can be provided on appeal. See *In re Marriage of Betts*, 155 Ill. App. 3d 85, 104 (1987).

¶ 26    Sonia has raised many issues on appeal related to the trial court's contempt order, including the admission of evidence, the court's findings, and the court's purge deadline. However, Sonia purged the contempt order by paying off the mortgage within 60 days. Thus, as explained below, Sonia's purge of the contempt order renders moot the vast majority of the issues she raises on appeal. The other issues she raises lack merit.

¶ 27                          A. Admission of Evidence

¶ 28    First, Sonia argues that the trial court erred in refusing to allow her to admit "material evidence" at the hearing that directly supported her "defense" to Russell's motion to compel and "materially prejudiced the outcome of the [contempt] trial." However, since Sonia purged the contempt order, whether evidence was properly entered at the contempt hearing is rendered moot. See *Betts*, 155 Ill. App. 3d at 104; *Felzak*, 226 Ill. 2d at 392.

¶ 29    Even if this issue were not moot, Sonia waived it. "[T]o preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the trial court." *Jones v. Rallos*, 384 Ill. App. 3d 73, 88 (2008). "Failure to make such offer of proof results in waiver of the issue on appeal." *Jones*, 384 Ill. App. 3d at 88.

¶ 30    In her appellate brief, Sonia described the documents she sought to have admitted

into evidence and attached them to her appellate brief as appendices. This was improper because those documents were not part of the record on appeal. See *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 499 (2006). Instead, Sonia was required to make an adequate offer of proof in the trial court when the court sustained Russell's objections to admission of the documents. *Jones*, 384 Ill. App. 3d at 88. The record reflects that she failed to do so. Thus, Sonia has waived this issue.

¶ 31                          B. Interpretation of Court Orders

¶ 32          Next, Sonia argues that the trial court misinterpreted court orders in finding that Russell was responsible for the mortgage principal and interest, while she was responsible for property taxes and homeowner's insurance on the marital home. She claims this ruling "directly harmed" her and "constituted reversible error" because it denied her "the opportunity to rebut [Russell's] false reimbursement claims." However, she admitted that the court "denied [Russell's] reimbursement request."

¶ 33          An appeal is moot when no "real controversy" exists (*Wellman*, 174 Ill. 2d at 353) or when events transpire that make it "impossible for the reviewing court to grant effectual relief to the complaining party" (internal quotation marks omitted) (*Felzak*, 226 Ill. 2d at 392). Here, the trial court denied Russell's reimbursement claim; thus, there is no "real controversy" to resolve, rendering this issue moot. *Wellman*, 174 Ill. 2d at 353. Even if we agreed with Sonia's contention, we could grant Sonia no "effectual relief" as the court denied Russell's reimbursement request. (Internal quotation marks omitted.) *Felzak*, 226 Ill. 2d at 392.

¶ 34                          C. 60-Day Deadline

¶ 35          Next, Sonia argues that the trial court abused its discretion in imposing a 60-day deadline to refinance, pay off the mortgage, or list the property for sale in order to purge herself of contempt because "refinancing was not possible."

¶ 36    This issue is moot because Sonia has purged the contempt by paying off the mortgage. See *Betts*, 155 Ill. App. 3d at 104. As such, there is no real controversy for which we can grant effectual relief.

¶ 37                                    D. Judicial Bias

¶ 38    Sonia also claims that the trial court exhibited "judicial bias" against her. In support of her claim, she points to "inaccurate statements that contradicted the record," "unnecessary and prejudicial comments from the bench," and "an unwillingness to fairly consider [her] legal arguments." She also asserts that the transcript from the hearing "is missing multiple key exchanges." (Emphasis omitted.) Sonia asserts, without citation to authority, that the court's "actions constitute reversible error."

¶ 39    First, we find that Sonia has forfeited review of this issue because she failed to cite relevant authority to support her assertions, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Rule 341(h)(7) requires that arguments contained in appellate briefs "contain the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). With respect to this issue, Sonia cited only two cases, and only for general propositions of law. "Reviewing courts are not depositories where litigants may dump the burden of arguments and research; courts are entitled to have the issues clearly defined and a cohesive legal argument presented." *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶ 28. Because Sonia failed to present a cogent legal argument supported by relevant authority, she has forfeited this argument. See *Alms*, 2022 IL App (4th) 220976, ¶ 28.

¶ 40    Forfeiture notwithstanding, we reject Sonia's claims of "judicial bias." "Trial judges are presumed to be both fair and impartial." *In re Estate of McHenry*, 2016 IL App (3d)

- 11 -

140913, ¶ 147. "The party claiming that a trial judge is prejudiced bears the burden of overcoming that presumption." *McHenry*, 2016 IL App (3d) 140913, ¶ 147. Adverse rulings against a party and unfavorable comments regarding the credibility of a party are insufficient to support a claim of judicial bias. *In re Marriage of Troske*, 2015 IL App (5th) 120448, ¶ 39.

> "The party claiming judicial bias must show that judge in question had (1) a personal bias stemming from some source other than the litigation; or (2) made comments in the course of the proceedings that revealed such a high degree of favoritism or antagonism on the part of the judge as to make fair judgment impossible." *McHenry*, 2016 IL App (3d) 140913, ¶ 147.

¶ 41 We have thoroughly reviewed the record and have found no indication that the trial court was prejudiced or biased against Sonia. While the court expressed some frustration with Sonia and questioned the credibility of her testimony on some issues, the court's statements did not reveal "such a high degree of favoritism or antagonism on the part of the judge as to make fair judgment impossible." *McHenry*, 2016 IL App (3d) 140913, ¶ 147. Further, the court's rulings against Sonia and its allegedly inaccurate statements about a prior court order are insufficient to support Sonia's claim of bias. See *Troske*, 2015 IL App (5th) 120448, ¶ 39. Thus, Sonia has failed to overcome the presumption that the court was fair and impartial.

¶ 42 We further reject Sonia's assertion that the transcript in this case was incomplete. Illinois Supreme Court Rule 323(b) (eff. July 1, 2017) provides, in pertinent part: "The report of proceedings shall be taken as true and correct unless shown to be otherwise and corrected in the manner permitted by [Illinois Supreme Court] Rule 329 [(eff. July 1, 2017)] for the record on appeal." Additionally, Rule 329 provides, in pertinent part:

> "The record on appeal shall be taken as true and correct unless shown to be

- 12 -

otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court or a judge thereof. Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth." Ill. S. Ct. R. 329 (eff. July 1, 2017).

¶ 43       "We are bound by the certified record." *Theobault-Olson Co. v. Petta*, 6 Ill. App. 3d 537, 539 (1972). "Reports of proceedings may not be contradicted [even] by affidavits of counsel." *Theobault-Olson Co.*, 6 Ill. App. 3d at 539. A report of proceedings will be accepted by the reviewing court and presumed accurate unless "the proposed report revealed on its face the omission of certain evidence." *Glenner v. Chicago Transit Authority*, 9 Ill. App. 3d 323, 326 (1972).

¶ 44       Here, the trial court filed and certified the record on appeal, including the report of proceedings. Contained in the report of proceedings are certifications by the court reporter that the "Report of proceedings was electronically recorded and is a true, correct, and complete transcript so taken at the time and place hereinabove set forth to the best of my ability based on the quality of the electronic recording." Nevertheless, Sonia contends on appeal that the report of proceedings is incomplete.

¶ 45       As set forth in Supreme Court Rules 323 and 329, we must take the record on appeal, including the report of proceedings, as "true and correct unless shown to be otherwise and corrected in the manner permitted" by Rule 329. Ill. S. Ct. Rs. 323, 329 (eff. July 1, 2017). Pursuant to Rule 329, any alleged inaccuracies contained in the record on appeal must be "submitted to and

settled by" the trial court. Ill. S. Ct. R. 329 (eff. July 1, 2017). Here, Sonia made no attempt to have the report of proceedings amended or corrected in the trial court to include the "multiple key exchanges" (emphasis omitted) that she contends were missing from the report of proceedings. We have no authority to do so on appeal, as we must accept the report of proceedings as "true and correct." See Ill. S. Ct. R. 323(b) (eff. July 1, 2017). Thus, we reject Sonia's contention that the report of proceedings was incomplete or inaccurate.

¶ 46                                          E. Outstanding Issues

¶ 47           Finally, Sonia argues that the trial court improperly failed to rule on several issues she raised at the hearing, including (1) enforcement of back child support, (2) continued child support for H.H. after high school, and (3) reimbursement for "mortgage-related tax deductions wrongfully claimed by [Russell]."

¶ 48           "Courts rule on motions and matters properly addressed to the court for determination." *In re Lance H.*, 2014 IL 114899, ¶ 33. An oral in-court request by a party without a motion does not suffice to bring a matter to the court's attention for adjudication. See *Lance H.*, 2014 IL 114899, ¶ 33. Thus, a trial court does not act improperly in denying a party's oral in-court request for relief. *Lance H.*, 2014 IL 114899, ¶ 33. Furthermore, a "court has the right and duty to control its own docket" and can decide when to hear and rule upon parties' motions. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 354 (2000); *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 37.

¶ 49           Here, the trial court made clear at the "Final Case Management Conference" on December 9, 2024, that the issues set for trial on January 13, 2025, were (1) Russell's petition to enforce and modify, (2) Sonia's motion to extend child support until H.H.'s high school graduation, and (3) Sonia's emergency motion to enforce the support order. Thus, the court did

not err in refusing to determine the other matters that Sonia brought to the court's attention for the first time at the hearing. See *Lance H.*, 2014 IL 114899, ¶ 33. The court was well within its authority to instruct Sonia to file written motions on those issues before the court would decide them. See *Hutchcraft*, 312 Ill. App. 3d at 354; *Schloss*, 2014 IL App (4th) 121086, ¶ 37.

¶ 50　　　　In light of our disposition of this cause, Sonia's "Motion to Submit Appellant's Brief Alone and Direct Disposition Without Remand," which was taken with the case, is rendered moot.

¶ 51　　　　　　　　　　III. CONCLUSION

¶ 52　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 53　　　　Affirmed.