# Illinois Official Reports

## Appellate Court

***In re Marriage of Ray*, 2014 IL App (4th) 130326**

| | |
|---|---|
| Appellate Court Caption | In re: MARRIAGE OF KARI L. RAY, Petitioner-Appellee, and DAVID J. RAY, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0326 |
| Filed | March 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In postjudgment dissolution proceedings arising from respondent's failure to pay maintenance and child support, petitioner established a *prima facie* case of contempt by presenting evidence of respondent's noncompliance with the trial court's order, and when respondent raised his fifth-amendment privilege against self-incrimination rather than presenting evidence as to why he should not be held in contempt, the trial court properly entered an order holding respondent in contempt, since respondent could not be allowed to use the privilege to avoid producing evidence that he should not be held in contempt and to shift the burden of proof back to petitioner. |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 11-D-52; the Hon. Joshua A. Meyer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas G. Maag (argued), of Maag Law Firm, LLC, of Wood River, for appellant.

John C. Webster (argued), of Williamson, Webster, Falb & Glisson, of Alton, for appellee.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Turner and Steigmann concurred in the judgment and opinion.

## OPINION

¶ 1    In August 2011, petitioner, Kari L. Ray, filed a petition for dissolution of marriage and a verified petition for temporary custody, maintenance, child support, and attorney fees. In December 2011, the trial court entered an agreed order compelling respondent, David J. Ray, to pay, *inter alia*, child support in the amount of $2,000 per month. In December 2012, respondent ceased making support payments per the court's order, which prompted petitioner to file a petition for rule to show cause to issue for indirect civil contempt and attorney fees. After a March 2013 hearing, the trial court held respondent in indirect civil contempt and set the purge amount at $1,000 cash. On appeal, respondent asserts the court improperly held him in contempt where respondent invoked his fifth-amendment privilege against self-incrimination during the contempt proceedings. We affirm.

¶ 2                               I. BACKGROUND

¶ 3    On August 22, 2011, petitioner filed a petition for dissolution of marriage. The same day, petitioner filed a verified petition for temporary custody, maintenance, child support, and attorney fees. In December 2011, the trial court entered an agreed order for temporary relief. The agreed order, in pertinent part, required respondent to pay $4,000 per month to petitioner. Of the $4,000 sum, the parties agreed $2,000 would be deemed maintenance and $2,000 would be deemed child support.

¶ 4    Respondent complied with this order until December 2012, when payments stopped. In January 2013, petitioner filed a petition for rule to show cause and attorney fees. The petition alleged respondent had failed to timely pay his temporary support and maintenance obligations, including December 2012 and each month thereafter, despite petitioner's repeated demands for payment. The petition requested the trial court enter an order requiring respondent

to show cause why he should not be held in indirect civil contempt of court for failure to meet his payment obligation.

¶ 5 Following a February 7, 2013, hearing on petitioner's petition for rule to show cause, the trial court ordered respondent to show cause why he should not be held in contempt for failure to comply with the court's December 2011 order for temporary relief. The court set the return on the rule for March 20, 2013. Petitioner thereafter filed an amended petition for rule to show cause on March 13, 2013. The amended petition added to its previous allegations (1) respondent's failure to pay child support during the months of January and February 2013, and (2) respondent's payment of $1,000 toward his arrearages in maintenance and child support with a check later returned for insufficient funds.

¶ 6 On March 20, 2013, the date of the hearing on the rule to show cause, respondent did not appear. The record contains no indication why he failed to appear. Per the court's written order finding contempt (filed after the March 26, 2013, hearing discussed below), the court found petitioner established a *prima facie* case of contempt at this hearing. We note here the record contains no report of proceedings, bystander's report, or agreed statement as to what transpired during the March 20, 2013, hearing. Following the hearing, the trial court entered an order holding respondent in contempt for his failure to appear on the rule entered on February 7, 2013. The order allowed respondent to purge the contempt by appearing on March 26, 2013, at 10:00 a.m., in the Macoupin County courthouse. The court further ordered respondent to show cause on petitioner's amended petition for rule to show cause at that time.

¶ 7 The parties appeared on March 26, 2013, to address the rule to show cause. Before proceeding, respondent orally moved to stay the proceedings due to a pending federal criminal investigation of respondent regarding the nonpayment of taxes. Respondent contended a stay was proper because he was unable to defend himself–he would be asserting his fifth-amendment privilege in response to any question that might incriminate him. The trial court denied respondent's motion to stay the proceedings, finding the potential harm to respondent was outweighed by several other factors in favor of denying the stay.

¶ 8 The cause proceeded to hearing on the rule to show cause. The trial court first admonished respondent of his rights in contempt proceedings. Respondent was then sworn to testify. Respondent stated his name and address in response to the court's questioning. He then asserted his fifth-amendment privilege in response to the court's question whether he was subject to a rule to show cause order. He further indicated he would plead the fifth amendment as to any and all evidence he could possibly present in his defense. In other words, because his finances were under investigation, he could not present any evidence on his current inability to pay without incriminating himself.

¶ 9 Accordingly, the trial court held respondent in contempt, stating:

"Okay. Well, I think, then based on the fact that once I enter the [r]ule to [s]how [c]ause [o]rder, the burden shifted to the [r]espondent to show cause[,] and he has not shown cause. So what I'm going to do is hold him in contempt of court for failure to pay child support and maintenance as alleged in the [a]mended [p]etition that was filed by the [p]etitioner."

Counsel for respondent again noted her objection "that this [c]ourt is holding him in contempt for asserting his constitutional rights under the [f]ifth [a]mendment." The court noted the objection and proceeded to set respondent's purge amount.

¶ 10 The trial court asked whether the parties would stipulate as to the amount of child support owed or whether testimony would be presented on the issue. Respondent's counsel would not stipulate because respondent did not "believe he should be paying [temporary] maintenance ***. So arguably the payments he has made should all be credited towards child support ***." Consequently, petitioner took the stand to testify as to the amount of child support in arrears. Petitioner testified she did not receive the ordered payments in December 2012 or January 2013. In February 2013, respondent issued petitioner two checks: one for $2,000, which was honored, and one for $1,000, which was later dishonored and returned for insufficient funds. Petitioner never received the remaining $2,000 owed to her for February 2013. Based on this testimony, the parties ascertained respondent owed petitioner $10,000 in outstanding child support and maintenance.

¶ 11 From this evidence, the trial court set respondent's purge amount at $1,000. The court explained it set the purge at 20% of the approximate support owed, which the court found to be approximately $5,000, because the court did not have sufficient knowledge of respondent's present financial situation.

¶ 12 The next day, on March 27, 2013, the trial court entered a written order reflecting its rulings regarding the stay, the finding of contempt, and the purge amount. This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, respondent argues the trial court improperly held him in contempt for failing and refusing to testify at the March 2013 hearing on the rule to show cause. The trial court, respondent argues, made its finding based on an adverse inference drawn from respondent's invocation of his fifth-amendment right, which was improper absent the presentation by petitioner of any evidence of respondent's ability to pay the allegedly unpaid support payments. Respondent has not taken issue with the trial court's denial of his motion to stay the contempt proceedings.

¶ 15 In marriage dissolution proceedings, when a party fails to obey a trial court's order for temporary relief, the party entitled to relief may initiate indirect civil contempt proceedings by filing a petition for rule to show cause. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 508, 608 N.E.2d 1339, 1345 (1993). Noncompliance with a court order is *prima facie* evidence of contempt. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 829, 633 N.E.2d 82, 93 (1994). When a party establishes a *prima facie* case of contempt, the burden shifts to the contemnor to show cause why he should not be held in contempt. *In re Marriage of Betts*, 155 Ill. App. 3d 85, 98, 507 N.E.2d 912, 921 (1987). To meet this burden, the contemnor may present evidence "his noncompliance was not wilful and contumacious and that he had a valid excuse for his failure to pay." *Id*.

¶ 16    The fifth amendment to the United States Constitution provides, in pertinent part, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The fifth-amendment privilege against self-incrimination applies to the states through the fourteenth amendment. *Allen v. Illinois*, 478 U.S. 364, 368 (1986). The privilege may be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972).

¶ 17    In this case, we will presume petitioner established a *prima facie* case of contempt by presenting to the trial court evidence of respondent's failure to pay his support obligations pursuant to the court's temporary order for relief. The record does not show what transpired during the March 20, 2013, hearing, during which the court found petitioner established a *prima facie* case of contempt. This deficiency in the record must be resolved against respondent, as the appellant "has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392, 459 N.E.2d at 959.

¶ 18    Consequently, at the March 26, 2013, hearing, the burden had already shifted to respondent to show cause why he should not be held in contempt. Respondent did not attempt to meet his burden and instead asserted his fifth-amendment privilege. Respondent argues after he invoked his fifth-amendment privilege, the trial court could not enter an order of contempt without petitioner presenting some evidence of his noncompliance. Respondent argues as follows:

> "All [p]etitioner needed to do to properly have [r]espondent held in contempt of court by the [c]ircuit [c]ourt for the issues at bar, was to present some evidence at the hearing, other than mere non-payment by [r]espondent. For instance, speaking strictly in the hypothetical, [p]etitioner *could have*, if true, testified that [r]espondent has a secret bank account in the Cayman Islands with ten million dollars on deposit, and that he had not paid her. Or [p]etitioner *could have*, if true, presented evidence that [r]espondent has significant assets that could be used to pay. Instead, at the actual hearing, no evidence was presented at all, including but not limited to either that [r]espondent has any significant amount of money or assets, that any payments had not been made, or anything else. Petitioner stopped with the invocation of the [f]ifth [a]mendment, and that is what is fatal to [p]etitioner's argument in this [c]ourt." (Emphases in original.)

Respondent's argument attempts to shift the burden back to petitioner. We decline to adopt his position.

¶ 19    On this point, we find the United States Supreme Court's decision in *United States v. Rylander*, 460 U.S. 752 (1983), instructive on whether a party may shift the burden back to the party alleging contempt after the *prima facie* case of contempt is made. In *Rylander*, the respondent was ordered to appear in front of an agent of the Internal Revenue Service and produce corporate records for inspection. *Id.* at 754. Respondent appeared before the agent but did not produce the records. *Id.* The district judge issued an order to show cause why the

respondent should not be held in contempt. *Id*. At the contempt hearing, the respondent took the stand and verified an "Oath in Purgation of Contempt" he had earlier submitted to the court, which stated he neither possessed the records nor disposed of them to any other person. *Id*. The respondent thereafter refused to submit to further questioning, asserting his fifth-amendment privilege. *Id*. at 754-55. Accordingly, the district court held the respondent in contempt, finding he had failed to introduce evidence in support of his claim he was unable to comply with the order. *Id*. at 755.

¶ 20 The Ninth Circuit reversed the district court's order holding the respondent in contempt. In doing so, the court "agreed that the Government, in a contempt proceeding, meets its initial burden by showing only a failure to comply and the burden is then on the [respondent] to come forward with evidence showing 'categorically and in detail' why he is unable to comply." (Internal quotation marks omitted.) *Id*. The Ninth Circuit concluded, however, a respondent need not meet this burden where he has a legitimate fifth-amendment claim that his testimony about those documents might be incriminating. *Id*.

¶ 21 The Supreme Court reversed the Ninth Circuit's decision, explaining:

> "[W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as [respondent] declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.
>
> We have squarely rejected the notion, apparently subscribed to by the Court of Appeals, that a possible failure of proof on an issue where the [respondent] had the burden of proof is a form of 'compulsion' which requires that the burden be shifted from the [respondent's] shoulders to that of the government." *Id*. at 758.

We acknowledge the factual circumstances in *Rylander* differ from those involved here, but we nonetheless find the Supreme Court's language instructive.

¶ 22 In this case, the trial court did not, as respondent posits, hold him in contempt for asserting his fifth-amendment privilege. Instead, the trial court held respondent in contempt because he failed to meet his burden of showing why he should not be held in contempt. The petitioner met her burden of establishing a *prima facie* case of contempt at the March 20, 2013, hearing. The court's March 27, 2013, written order so reflects. We must presume petitioner presented some evidence of respondent's noncompliance at the March 20, 2013, hearing. At this point, respondent had the burden of establishing cause as to why he should not be held in contempt. Respondent's assertion of his fifth-amendment privilege cannot be substituted for evidence and does not shift the burden back to petitioner. Respondent is attempting to use the fifth-amendment as a sword to defeat allegations of contempt, not as a shield from compulsory self-incrimination as it was originally intended. We affirm the trial court's order holding respondent in contempt.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.